UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

IN RE

BRUNO MACHINERY CORP.
                              Debtor.

——————————————————————

ONTARIO DIE COMPANY, LTD.,
                              Appellant,

                  -against-

BRUNO MACHINERY CORP.,
                              Appellee.

——————————————————————

Bankr. Case No. 05-20412
            Chapter 11

Dist. Ct. Case No.
1:06 -CV-001172
(LEK)

**MEMORANDUM-DECISION AND ORDER**

On August 31, 2006, Appellant Ontario Die Company, Ltd. ("Ontario" or "Creditor")

filed with this Court a Notice of Appeal from an Order of the United States Bankruptcy Court for

the Northern District of New York (*Littlefield,* B.J.), entered on August 25, 2006, denying

Appellant's Motion to allow late filed proof of claim.  This appeal was filed with this Court on

October 2, 2006.  Appellant now contends that the Bankruptcy Court erred and abused its

discretion by not finding excusable neglect when the ability to file timely was entirely within

Ontario's counsel's control.  For the following reasons, the August 25, 2006 decision of the

Bankruptcy Court is reversed.

I.      BACKGROUND

Debtor Bruno Machinery Corp. ("Bruno" or "Debtor") filed a Chapter 11 petition on

December 27, 2005.  Affirmation in Opposition to Motion by Ontario Die Company, Ltd. (Dkt.

No. 3, Rec. 6) at ¶ 1.  Ontario was included as a creditor on Schedule F of the Petition.  Id. at ¶ 2.

The debt was listed as disputed.[1]  Id. at ¶ 3.  On December 28, 2005, the Court issued notice of

the Petition (which was sent to Ontario) and set a bar date of April 24, 2006 for filing proofs of

claims.  Id. at ¶1.  On April 19, 2006, Ontario's counsel Amy Monahan ("Monahan") called the

Bankruptcy Court Clerk's office to obtain assistance in filing the proof of claim.  Affidavit of

Amy M. Monahan (Dkt. No. 3, Ex. 4) at ¶ 9.  She received no response from the Clerk's office

and called the Clerk's office again on April 24, 2006.  Id.  Monahan was unable to obtain a

password for the Court's Electronic Court Filing system ("ECF") and decided to overnight the

proof of claim, having it arrive on April 25, 2006.  Id. at ¶10.  Monahan received a password on

April 25, 2006 and immediately filed the proof of claim, along with requesting that Bruno

consent to stipulating the claim as timely filed; Bruno refused.  Id. at ¶12.  On August 23, 2006,

Ontario motioned the Bankruptcy Court to deem its proof of claim as timely filed.  Affidavit of

Scott Kosove (Dkt. No. 7, Ex. H).  A hearing was held on that date and Judge Littlefield denied

the motion on August 25, 2006.  Affidavit of Scott Kosove (Dkt. No. 7, Exs. I and J).  This

timely appeal followed.

## II.     STANDARD OF REVIEW

The Bankruptcy Court's factual findings are accepted unless clearly erroneous and its

conclusions of law are reviewed de novo.  See In re Arochem Corp., 176 F.3d 610, 620 (2d Cir.

1999).  "Bankruptcy Court decisions to deny a request to file late are reviewed for abuse of

discretion."  Midland Cogeneration Venture L.P. v. Enron Corp. (In re Enron), 419 F.3d 115, 124

---

[1]Ontario's claim is based on a breach of contract suit that it filed in New York State
Supreme Court on October 14, 2004.  Appellant's Brief (Dkt. No. 6) at 4.  Bruno counterclaimed on
January 27, 2005.  Id.  The suit was stayed as a result of the Petition.  Affirmation in Opposition to
Motion by Ontario Die Company, Ltd. (Dkt. No. 3, Rec. 6) at¶ 3.

2

(2d Cir. 2005).  "A district court abuses its discretion when it applies legal standards incorrectly

or relies upon clearly erroneous findings of fact, or proceed[s] on the basis of an erroneous view

of the applicable law."  Harris v. Albany County Office (In re Harris), 464 F.3d 263, 268 (2d Cir.

2006) (internal quotation marks and citation omitted; alteration in original).  The Court finds that

Debtor did not suffer prejudice because of the diminishment of the claim pool and cost of

litigating this issue, and that the reason for Monahan's delay was not *per se* inexcusable.

## III.    DISCUSSION

The Second Circuit has opined that the central function of a bar date is to facilitate the

process of re-organization by informing debtors of what claims exist against them, at the time of

obtaining bankruptcy protection, so that they may better plan a path out of bankruptcy.  In re

Enron Corp., 419 F.3d at 127-128.  To the Second Circuit the crucial aspect of a bar date is so the

re-organization happens in as efficient a manner as possible. Id.  Congress struck a balance

between facilitating re-organization and enabling creditors to collect debts owed to them in

Federal Rule of Bankruptcy Procedure 9006(b)(1) ("Rule 9006(b)(1)").  This rule creates a

balance by acknowledging that the bar date is strict thus facilitating re-organization, but that it

can be extended when the failure to file on time was the result of excusable neglect in order to

allow creditors every reasonable opportunity to obtain payment.  FED. R. BANK. P. 9006(b)(1).

### A.    The Legal Standard Set Forth In Pioneer

Rule 9006(b)(1) sets the standard for enlarging the bar date as excusable neglect.  The

United States Supreme Court defined the standard in Pioneer Inv. Serv. Co. v. Brunswick

Assocs. P'ship, 507 U.S. 380 (1993).  The Supreme Court stated that Congress did not define

excusable neglect in the rule, and so it examined the common usage of the term in order to reach

the proper definition.  Id. at 388.  The Supreme Court stated that, "The ordinary meaning of 'neglect' is 'to give little attention or respect' to a matter, or, closer to the point for our purposes, 'to leave undone or unattended to *esp[ecially] through carelessness*.' Webster's Ninth New Collegiate Dictionary 791 (1983) (emphasis added). The word therefore encompasses both simple, faultless omissions to act and, more commonly, omissions caused by carelessness." Id.  The Supreme Court then concluded that, "Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." Id.  The Supreme Court held that excuse is an equitable factor; in creating the Pioneer test the Court decided that a court ruling on whether or not excusable neglect exists must take into account everything surrounding the filing, including "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." Id.

The Second Circuit by its own accord has taken a hard line toward applying the Pioneer test.  Silivanch v. Celebrity Cruises, Inc., 333 F.3d 355, 368 (2d Cir. 2003).  The Second Circuit notes that the four Pioneer factors do not have equal weight.  Usually, the courts will not overly focus on the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, and whether the movant acted in good faith, because they tend to go for the partying seeking the extension.  In re Enron Corp., 419 F.3d at122-123.  Instead, the Circuit has stated that the crucial factor is the reason for the delay, including whether it was within the reasonable control of the movant. Id.

The Second Circuit admits that there is no exact science for determining how long a delay will be allowed, observing that some courts have allowed delays of years, while delays of a day have been precluded. Id. at 128. The key aspect in determining how long a delay is too long, is how the length of the delay will affect the judicial administration of the case and the re-organization plan. Id.

### B.    The Application of the Pioneer Factors

The Bankruptcy Court applied the Pioneer factors found that there was no prejudice to the judicial administration of the case and that Ontario's attorney, Monahan, acted in good faith. However, Judge Littlefield found that there was prejudice to the debtor, in the form of increased costs for litigating the extension issue, and that the addition of another claim would further deplete the funds available for the unsecured claims pool. August 25, 2006 Order of Hon. Robert E. Littlefield (Dkt. No. 3, Ex. 11) at 2. The Bankruptcy Court also held that the delay was totally within the control of Monahan and, therefore, as a matter of law there was no excusable neglect and no extension of time to file proof of claim was granted. Id.

The Court agrees with the findings of the Bankruptcy Court in that there was no prejudice to the judicial administration of the case and that Monahan acted in good faith. However, the Court finds that the law does not allow a finding of prejudice against Debtor and that Monahan's delay was excusable. Accordingly, the Bankruptcy Court abused its discretion.

### 1.    No Prejudice to the Debtor

The Bankruptcy Court held that allowing the late proof of claim would prejudice Debtor because it had to spend money to defend the exclusion of the proof of claim and the inclusion of an additional claim would diminish the share that each unsecured creditor receives in the final

plan.  However, the Second Circuit has held that while the <u>Pioneer</u> test does not give any real indication of what prejudice to the debtor is, it certainly is not just a dollar for dollar depletion of the claim pool.  <u>In re Enron Corp.</u>, 419 F.3d at 130.; <u>In re R.H. Macy & Co.</u>, 166 B.R. 799, 802 (S.D.N.Y. 1994).  The Circuit concluded that, if whenever a party sought to file a late claim prejudice was found because of the claims effect on the pool of available funds, all late claims would be condemned and disallowed.  <u>In re Enron Corp.</u>, 419 F.3d at 130.  The same reasoning applies to the fact that the debtor had to spend money litigating the late claim; if this was allowed as a ground for prejudice under <u>Pioneer</u>, every claim would be denied.  As a result, the grounds relied on by the Bankruptcy Court are not sufficient to find prejudice and condemn the late filing.

        The Second Circuit in <u>In re Enron Corp.</u> listed factors for determining whether a debtor will suffer prejudice if a late claim is allowed.  The Circuit held,

> the size of the claim cannot be irrelevant to the analysis, and some courts have taken into account whether allowance of a particular late claim would "jeopardize the success of the reorganization," by, for example, "forcing the return of . . . amounts already paid out under the confirmed Plan, or affecting the distribution to creditors and equity holders."  <u>In re O'Brien Envtl. Energy, Inc.</u>, 188 F.3d at 128.  Other factors include whether the debtor had advance knowledge of the claim, <u>see, e.g.</u>, <u>id.</u>; <u>In re Keene Corp.</u>, 188 B.R. 903, 910 (Bankr. S.D.N.Y. 1995), and whether allowing a claim would be likely to precipitate a flood of similar claims...

<u>In re Enron Corp.</u>, 419 F.3d at 130.

        Here none of the factors stated by the Second Circuit are present.  In relation to the rest of the claims filed, Ontario's claim is between five (5) and ten (10) percent of the unsecured claims.  Appellee's Brief (Dkt. No. 10) at 3.  Further, there is no plan yet for re-organization of the Debtor and payment of the unsecured claims;  no amount of the unsecured claims pool had been

paid out when Ontario sought to have their claim allowed.  See Hearing of August 23, 2006 (Dkt. No. 3, Ex. 10).  Allowing this claim does not prejudice them because they have done no work that would have to be redone if the claim was allowed.  Debtor had advance knowledge of the claim, as they included it in Schedule F and Ontario had filed suit against it on this claim. Debtor had the ability to plan for this claim since they knew before the Petition that it was outstanding.  Lastly, Debtor has made no argument that there would be a flood of similar claims and there are no facts present to infer such a flood.  None of the factors demonstrating prejudice as established by the Second Circuit are present.  Therefore, the Court can only find that there would be no prejudice to Debtor by allowing the late filing of Ontario's proof of claim.

### 2.       The Reason for the Delay Does Not Need to be Outside the Control of the Party for Excusable Neglect

The Bankruptcy Court held that Ontario's failure to file a timely claim, "was completely within its own control and/or its counsel's control, and, therefore, there can be no finding of excusable neglect." August 25, 2006 Order of Hon. Robert E. Littlefield (Dkt. No. 3, Ex. 11) at 2.  However, the Supreme Court's holding in Pioneer, stated, "the enlargement of prescribed time periods under the 'excusable neglect' standard of Rule 9006(b)(1) is not limited to situations where the failure to timely file is due to circumstances beyond the control of the filer." Pioneer, 507 U.S. at 391.  The Supreme Court specifically held that courts may allow late claims, " where a party may choose to miss a deadline although for a very good reason, such as to render first aid to an accident victim discovered on the way to the courthouse, as well as cases where a party misses a deadline through inadvertence, miscalculation, or negligence." Id.

In this case the failure to file a timely claim was due to Ontario's attorney's inability to

gain access to ECF to file the claim on time.  Monahan did try to file on time, she in fact called the Bankruptcy Court Clerk's office on April 19, 2006 to obtain help with filing and received no response from the clerk.  Further, she also called back on the day of the bar date to obtain help again and was unable to get the requisite aid to file on time.  The assertion put forth by the Unsecured Creditors Committee in their Reply Brief that Ontario's failure to timely file was due to their failure to properly diary the bar date is incorrect.  See Appellee's Brief (Dkt. No. 10) at 3. There are no facts in the record or put forth by the Debtor to support such an assertion.

The Bankruptcy Court acknowledged that Monahan acted in good faith by trying to file on time and failing.  The Bankruptcy Court is also correct in noting that there was a host of options available to Monahan for filing the proof of claim on time that she should have tried but did not.  See August 23, 2006 Hearing (Dkt. No. 3, Ex. 10) at 18-26.  However, while Ontario did purposely miss the filing by the bar date, this situation is not one in which there is a *per se* finding of no excusable neglect.  In Pioneer the Supreme Court plainly held that there would be instances when excusable neglect should be found when the late filing was due to miscalculation or negligence and also when the party had a good reason to file late.  Pioneer, 507 U.S. at 391. Here, the Court finds that Ontario had a good reason for filing late, its counsel tried to file on time and was prevented from doing so by forces not entirely within her control.

IV.    CONCLUSION

Courts extending the time to file proofs of claim must balance the interests of the debtor in re-organizing against the interests of the creditor in obtaining payment.  The Court's decision to allow the late filing of Ontario's claim does not put Debtor under an additional burden, while the Creditor re-obtains their right to payment.  As discussed above, the Court finds that the late

filing of the Ontario's proof of claim was the result of excusable neglect, due to Ontario's good

faith efforts to file on time, and so it will be granted leave to file its proof of claim.

Accordingly, it is hereby

**ORDERED**, that the August 25, 2006 Order of Hon. Robert E. Littlefield (Dkt. No. 3 Ex.

10) is **REVERSED** and **REMANDED** for proceedings consistent with this Order; and it is

further

**ORDERED**, that Ontario's Appeal is **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court shall serve copies of this Order upon the parties

to this action.

**IT IS SO ORDERED**.

DATED:        July 12, 2007
              Albany, New York

_____
       Lawrence E. Kahn
       U.S. District Judge

9